## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

* * * * *

| | |
|---|---|
| JOAN BRASILE, an individual; CHARLOTTE GERMAN, f/k/a CHARLOTTE BONNER, an individual; for themselves and all those similarly situated, | Case No. 23-cv-_____ <br><br> HON. _____ |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| COUNTY OF OAKLAND by its BOARD OF COMMISSIONERS, ROBERT WITTENBERG, in his individual capacity and official capacity as Treasurer of Oakland County; and ANDREW MEISNER, in his individual capacity and official capacity as Treasurer of Oakland County, | **(JURY DEMAND)** <br> **\*\* CLASS ACTION \*\*** |
| Defendants. | |

_____/

## COMPLAINT

COME NOW the Plaintiffs, both individually and on behalf of a class of similarly situated individuals and entities, by and through counsel, for their Complaint state as follows:

## PARTIES

1.      Plaintiff Joan Brasile presently resides in Oakland County and owned real property which was foreclosed in Oakland County, Michigan.

2.      Plaintiff Charlotte German, f/k/a Charlotte Bonner, presently resides in Oakland County and owned real property which was foreclosed in Oakland County, Michigan.

3.      Defendant County of Oakland by its Board of Commissioners ("Oakland County" or "County") is a governmental unit in the State of Michigan.

4.      Defendants Robert Wittenberg and Andrew Meisner (collectively, "Treasurers") served as county treasurers for Oakland County during the relevant class period.

5.      Defendant Robert Wittenberg ("Treasurer") is a public official currently serving as county treasurer for Oakland County and is sued in his personal capacity and official capacity.

6.      Defendant Andrew Meisner is or was a public official who was serving as county treasurer for Oakland County and is sued in his personal capacity and official capacity.

7.      Oakland County and the Treasurers chose to be a Foreclosing Governmental Unit ("FGU") under MCL § 211.78, thus making affirmative,

2

voluntary, and discretionary decisions for Oakland County based on its own county policy.

8.     Prior to the tax foreclosures referenced below, Plaintiffs owned real property in Oakland County commonly known as follows (individually, each listed property "Subject Property," and collectively with class members, "Subject Properties"):

    a.  Plaintiff Joan Brasile was the owner of 14 McNeil St. and 18 McNeil St. in Pontiac, Oakland County, Michigan (collectively hereinafter the "Brasile Property"); and

    b.  Plaintiff Charlotte German was the owner of 19 Tacoma Ct. in Pontiac, Oakland County, Michigan (hereinafter the "German Property").

9.     Each class member similarly owned real property in Oakland County.

**JURISDICTION AND VENUE**

10.    This is a civil action seeking, among other requested relief, recognition of a constructive trust and unpaid "just compensation" against Defendants for violations of Article X, § 2 of the Michigan Constitution and the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

3

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1343 (civil rights cases); 28 U.S.C. § 2201 (declaratory judgments via the Declaratory Judgment Act); and 28 U.S.C. § 1367 (supplemental state law claims).

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), since Defendants, individually and collectively, conduct or have conducted business in the Eastern District of Michigan and the Subject Properties are situated within the Eastern District of Michigan.

## TAX FORECLOSURES

13.     Prior to July 17, 2020, the collection of delinquent taxes was set out in the General Property Tax Act at sections MCL 211.78 to MCL 211.79a ("GPTA").

14.     The GPTA was modified on December 22, 2020 by 2020 Public Act 255 and 2020 Public Act 256.

15.     The GPTA allowed County to voluntarily choose to act as the Foreclosing Governmental Unit ("FGU") in lieu of designating the State of Michigan (the "State") to serve as the FGU. *See* MCL § 211.78(3).

16.     The Defendants chose to act as the FGU pursuant to the GPTA, under MCL § 211.78, thus making affirmative, voluntary, and discretionary decisions for Oakland County based on their own policy.

4

17.     Under the GPTA, Defendants had multiple opportunities to choose to act as the FGU or have the State of Michigan act as the FGU.

18.     Defendant County chose to act as the FGU.

19.     Defendants caused Plaintiffs' and class members' interests in the Subject Properties to be foreclosed pursuant to the GPTA as a result of delinquent taxes, unpaid assessments, fees, penalties, and/or interest (individually, "Tax Foreclosure" and collectively, "Tax Foreclosures").

20.     Upon information and belief, at the time of the Tax Foreclosures, Plaintiffs and class members owed amounts to the County for delinquent taxes and/or assessments, interest, penalties, and fees reasonably related to the foreclosure and sale of the Subject Properties ("Tax Delinquency" or "Tax Delinquencies" as shown in **Exhibit A**.

21.     Following the Tax Foreclosures, Defendants retained ownership or directed, implemented, or gave instructions that the Subject Properties be sold at auction to third parties or that the Subject Properties be conveyed to the State of Michigan, the County, a township, a village, a city, a land bank or government entity ("Tax Sale" or "Tax Sales").

22.     Defendants conducted and implemented tax foreclosures of the Subject Properties and conveyed the Subject Properties pursuant to Tax Sales after the Michigan Supreme Court issued its decision in *Rafaeli, LLC* v. *Oakland County*, 505

Mich. 429; 952 N.W.2d 435 (2020) and after the enactment of 2020 P.A. 255 and 2020 P.A. 256.

23.     Upon information and belief, Defendant County received proceeds from the Tax Sales.

24.     Upon information and belief, Defendant County received proceeds from the Tax Sales that exceeded the Tax Delinquencies ("Surplus Proceeds").

25.     For each of Plaintiffs, the amount of the "tax delinquency" at the time of foreclosure sale, the State Equalized Value (or "SEV"), the foreclosure "Sale Price," and "Surplus Proceeds" are reflected on **Exhibit A**.

26.     Upon information and belief, the Defendants invested the Surplus Proceeds deriving income (the Surplus Proceeds and the income derived therefrom shall be referred to as the "Accrued Surplus Proceeds").

27.     Defendants' actions, as described herein, were undertaken pursuant to an official rule, statute, policy and/or custom, thereby permitting Plaintiffs' and class members' claims for liability against the County and others claiming immunity, as set forth in *Monell v New York Dep't of Social Servs*, 436 US 658; 98 S Ct 2018 (1978) and *Carlton v Dep't of Corr*, 215 Mich App 490; 546 NW2d 671 (1996).

6

### *RAFAELI* AS FOUNDATION FOR THE CLAIMS

28.     On July 17, 2020, the Michigan Supreme Court issued its opinion in

*Rafaeli, LLC v. Oakland County*, 505 Mich. 429; 952 N.W.2d 435 (2020)

("*Rafaeli*"), in which the Court held that the Surplus Proceeds from Tax Sales

retained by the FGU must be returned to Plaintiffs and class members. The *Rafaeli*

opinion is attached hereto as **Exhibit B**.

29.     *Rafaeli* held that Plaintiffs and class members have a common law right

to the Surplus Proceeds and held the County's retention of Surplus Proceeds violated

Article X, § 2 of the Michigan Constitution. Specifically, the Michigan Supreme

Court opined that:

> To the extent the GPTA permits defendants to retain these
> surplus proceeds and transfer them into the county general
> fund, the GPTA is unconstitutional as applied to former
> property owners whose properties were sold at a tax-
> foreclosure sale for more than the amount owed in unpaid
> taxes, interest, penalties, and fees related to the forfeiture,
> foreclosure, and sale of their properties.
>
> *Rafaeli,* 505 Mich. at 474-75; 952 N.W.2d at 461.

30.     The *Rafaeli* court's decision recognized Plaintiffs' and class members'

vested right to return of the Surplus Proceeds as being protected by the Takings

Clause of Michigan's Constitution. *Rafaeli*, 505 Mich. at 456.

31.     The Subject Properties were sold on or after January 1, 2021.

32.     Pursuant to *Rafaeli*, once the Subject Properties generated Surplus proceeds, Plaintiffs and class members were entitled to immediate turnover of those Surplus Proceeds.

## *HALL v. MEISNER* And *TYLER v. HENNEPIN COUNTY* AFFIRM THAT FEDERAL PROTECTIONS APPLY IN ADDITIONAL TO STATE CLAIMS

33.     On October 13, 2022, the Sixth Circuit Court of Appeals issued its opinion in *Hall v. Meisner*, 51 F.4th 185 (2023) ("*Hall*"), in which the Court held that Fifth Amendment protections apply to Michigan Tax Foreclosures.

34.     On May 25, 2023, the United States Supreme Court issued its opinion in Tyler v. Hennepin County, ____ U.S. (2023) (Docket No. 22-166) which held that Fifth Amendment protections apply to owner's equity and that such rights are inherent and thus not subject to being modified by legislative action. The Tyler opinion is attached hereto as **Exhibit B**.

35.     The Rafaeli court held that Plaintiffs and class members have a common law right to the Surplus Proceeds and held the provisions of the GPTA which required the FGU to retain Surplus Proceeds violated the Michigan Constitution.

36.     The Rafaeli decision established Plaintiffs' and class members' vested right to return of the Surplus Proceeds.

37.    The Defendants have failed to turn over the Surplus Proceeds to Plaintiffs and class members.

38.    The Surplus Proceeds are and have been subject to a constructive, involuntary, and/or *ex delicto* trust.

39.    Pursuant to the decision of the Michigan Supreme Court in *Rafaeli*, as of July 17, 2020, Plaintiffs and class members are entitled to immediate recovery/return of the Surplus Proceeds the Defendants currently hold in constructive trust for the benefit of the Plaintiffs and class members.

40.    After issuance of the Rafaeli decision, Defendants' retention of Plaintiffs' and class members' Surplus Proceeds was outside the scope of activity authorized by the Constitution, statute, local charter charger or ordinance, or other law.

41.    Defendants' conduct after July 17, 2020, falls outside the "exercise of governmental function."

42.    Defendants' conduct before July 17, 2020, falls outside the "exercise of governmental function."

43.    Defendants' actions and/or interactions were undertaken in willful and wanton

disregard of Plaintiffs' and class members' property rights guaranteed under the Michigan and United States Constitutions.

44.    Defendants' retention of and/or failure to return Plaintiffs' and class members'

property is outside the scope of governmental immunity.

45.    Upon information and belief, some of Plaintiffs' and class members' Surplus

Proceeds were deposited into the County's General Fund.

46.    Upon information and belief, Defendant County has derived investment income

from the retention of the Surplus Proceeds.

47.    Defendants' retention of Plaintiffs' and class members' Surplus Proceeds is done so

that the County can use the Surplus Proceeds for the County's own use and for the purpose of earning interest and/or investment income.

48.    The earning of interest and/or investment income is an activity that is conducted

primarily for the purpose of producing a pecuniary profit for the County.

49.     In addition to the Surplus Proceeds, the County continues to hold the interest and/or investment income earned from the Surplus Proceeds.

50.     The Defendants have refused to turn over the Accrued Surplus Proceeds to Plaintiffs and class members.

51.     Pursuant to the decision of the Michigan Supreme Court in *Rafaeli*, as of July 17, 2020, Plaintiffs and class members are entitled to the return or turnover of the Surplus Proceeds and, consequently, the return or turnover of the interest and/or investment income earned on the Surplus Proceeds.

52.     After issuance of the *Rafaeli* decision, Defendants' retention of Plaintiffs' and class members' Accrued Surplus Proceeds was clearly not within the scope of activity authorized by the Constitution, statute, local charter charger or ordinance, or other law.

53.     Before issuance of the Rafaeli decision, Defendants' retention of Plaintiffs' and class members' Accrued Surplus Proceeds was clearly not within the scope of activity authorized by the Constitution, statute, local charter, ordinance, or other law.

54.     Defendants' retention of Plaintiffs' Surplus Proceeds and interest earned thereupon after the date of accrual and after the Defendants become aware of the *Rafaeli* decision constitutes either intentional misconduct or gross negligence, which is the proximate cause of Plaintiffs' and class members' damages.

55.     Defendants converted the difference between the fair market values and Tax Delinquencies (the "Equity" or "Equities") in each of the Subject Properties.

## PUBLIC ACT 256 GIVES RISE TO A TAKING

56.     In December 2020, the Michigan legislature passed, and the governor signed, Public Acts 255 ("P.A. 255") and 256 ("P.A. 256"), giving both Acts immediate effect on December 22, 2020.

57.     Public Act 255 is attached as **Exhibit C**, and Public Act 256 is attached as **Exhibit D**.

58.     Pursuant to P.A. 256 (now MCL § 211.78t), Plaintiffs and class members are permitted to follow the procedures outlined in MCL § 211.78t to obtain what the statute defines as "Remaining Proceeds[1]."

59.     MCL 211.78l attempts to restrict any effort to "recover any proceeds" to the procedures required under MCL § 211.78t.

60.     Upon information and belief, Defendants are asserting that successfully jumping the hurdles imposed by MCL § 211.78t is Plaintiffs' and class members' exclusive remedy and failure to clear all the hurdles imposed by MCL § 211.78t means the County gets to keep the money.

---

[1] "Remaining proceeds" are Surplus Proceeds less certain allowable expenses, less a 5% commission fee payable to the Treasurer.

61. Upon information and belief, Defendants have prevented Plaintiffs and class members from obtaining Surplus Proceeds or Remaining Proceeds if the strictest adherence to any of the procedures required under MCL § 211.78t are not followed.

62. The government may not take a property owner's equity by legislatively redefining it, *Phillips v. Washington Legal Found.*, 524 U.S. 156, 167 (1998).

63. Defendants asserted application of P.A. 256 in this manner constitutes an illegal restraint on the exercise of Plaintiffs' and class members' rights to obtain their constitutionally protected property or just compensation from Defendants.

64. The State Legislature cannot remove self-executing constitutional rights. *See Promote the Vote v Sec'y of State*, 333 Mich App 93; 958 NW2d 861 (2020).

65. The Takings Clause of the Fifth Amendment of the United States Constitution and Article X, § 2 of the Michigan Constitution are self-executing constitutional provisions.

66. Defendants have failed or otherwise refused to return all of Plaintiffs' and class members' Surplus Proceeds, and in most instances, have failed or otherwise refused to return any of Plaintiffs' and class members' Surplus Proceeds.

67.     Failure to turn over Plaintiffs' and class members' Surplus Proceeds constitutes an unconstitutional taking of Plaintiffs' and class members' property.

## PLAINTIFFS' AND CLASS MEMBERS' PROPERTIES WERE FORECLOSED AND THE SURPLUS PROCEEDS WERE NOT TURNED OVER TO THE RIGHTFUL OWNERS

68.     Upon information and belief, at the time of the Tax Foreclosures of the Subject Properties, Plaintiffs and class members owed small amounts of delinquent taxes and/or assessments, interests, penalties, and fees, reasonably related to the foreclosure and sale of the Subject Properties (hereinafter, "Tax Delinquency" or "Tax Delinquencies") as set forth on **Exhibit A**.

69.     Defendants have failed and/or refused to turn over the Surplus Proceeds to Plaintiffs and class members.

70.     Defendants' continued retention of Plaintiffs' and class members' Surplus Proceeds remains outside the scope of activity authorized by the United States Constitution or the State Constitution.

71.     Upon information and belief, Defendants assert P.A. 256 (and specifically MCL § 211.78t) as a defense and excuse for refusing to return Surplus Proceeds or the lesser Remaining Proceeds to similarly situated individuals.

72.     Upon information and belief, Defendants assert that Plaintiffs and class members cannot obtain their Surplus Proceeds or Remaining Proceeds because they

14

did not submit a Notice of Intention to Claim Remaining Proceeds with the Defendants by July 1 in the year of foreclosure.

73.    Where Defendants have paid Remaining Proceeds, Defendants have kept five percent (5%) of Plaintiffs' and class members' Surplus Proceeds.

74.    P.A. 256, as enforced, in effect acts as an unconstitutional restraint on Plaintiffs' and class members' rights.

75.    As a result of *Rafaeli* and Defendants' unconstitutional and unconscionable retention of Plaintiffs' and class members' Surplus Proceeds, the Surplus Proceeds are and have been imbued with and are subject to a constructive, involuntary, and/or *ex delicto* trust.

76.    Plaintiffs and class members remain entitled to immediate turnover/return of the Surplus Proceeds generated from the Subject Properties.

77.    Defendants either wantonly or intentionally caused Plaintiffs and class members harm when County ignored, or otherwise disregarded, Plaintiffs' and class members' rights guaranteed under the Michigan and United States Constitutions.

78.    In light of *Rafaeli* and *Tyler*, Defendants' use of P.A. 256 to avoid turnover Plaintiffs' and class members' property is a taking in violation of Article X, § 2 of Michigan's Constitution and of the Fifth Amendment of the United States Constitution.

79.     Defendants did not initiate any condemnation action, process, or procedure for the taking of, or compensation for, Plaintiffs' and class members' Surplus Proceeds and/or Equity.

The process, plan, and mechanism by which Defendants assert Plaintiffs and class members are to obtain Surplus Proceeds or at least their Remaining Proceeds attempts to strip Plaintiffs and class members of their vested property rights without effective due process of law and without just compensation.

## CLASS ALLEGATIONS

80.     This action is brought by Plaintiffs individually and pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the owners of real property whose properties were foreclosed and/or sold on January 1, 2021 and at all times thereafter, including and through the issuance of a final judgment in this matter, and whose Surplus Proceeds have not been returned or were otherwise subjected to the unconstitutional process and legislation that, absent a constructive trust, resulted in the taking, conversion, and/or *ex delicto* withholding of their Surplus Proceeds.

81.     The proposed class consists of all owners of real property located in Oakland County whose real property was seized through a real property tax foreclosure action and/or disposed of through a Tax Sale for an amount in excess of the property's Tax Delinquency and who did not receive just compensation for the Equity in the Subject Properties or who did not receive just compensation for the full

16

Surplus Proceeds generated in excess of the Tax Delinquency, for the period January 1, 2021 through the date a final judgment is entered.

82.    The number of persons who have been injured by the practices discussed herein is sufficiently numerous as to make class litigation the most practical method to secure redress for the injuries sustained and to provide class-wide equitable relief.

83.    Plaintiffs' claims are common to, and typical of, those raised by the class members Plaintiffs seek to represent including:

    a.  Whether P.A. 256 is unconstitutional on its face and/or as applied and/or in effect;

    b.  Whether Plaintiffs and class members have had their property rights impaired or abrogated by P.A. 256;

    c.  Whether Defendants failed to turn over plaintiffs' and class members' Surplus Proceeds pursuant to the Michigan Supreme Court's decision in *Rafaeli*;

    d.  Whether Defendants failed to turn over plaintiffs' and class members' Surplus Proceeds as protected by the Fifth Amendment;

    e.  Whether the Defendants kept Plaintiffs' and class members' Surplus Proceeds for the benefit of the County.

f.  Whether the Surplus Proceeds earned interest or other pecuniary return for the benefit of the County;

g.  Whether Defendants retained any interest or other return earned on the Surplus Proceeds for the benefit of the County;

h.  Whether Defendants failed to put in place, have, or undertake a permissible process to turn over Surplus Proceeds to Plaintiffs and class members after the Surplus Proceeds were generated;

i.  Whether Remaining Proceeds are the same as Surplus Proceeds;

j.  Whether Defendants failed to put in place, have, or undertake a sufficient process to turnover Surplus Proceeds to Plaintiffs and class members;

k.  Whether County was unjustly enriched by its illegal retention of Surplus Proceeds;

l.  Whether Surplus Proceeds and constitutionally protected property can vanish into thin air; and

m. Whether a constructive trust has been created under which Defendants hold the Surplus Proceeds for the benefit of the Plaintiffs and class members.

84.  The foregoing issues of fact and law predominate over any issues that require individualized proof.

85. Plaintiffs and class members have suffered the same injury.

86. There are clear questions of law raised by the named Plaintiffs' claims common to and typical of those raised by the class Plaintiffs seek to represent including:

   a. Whether the Michigan Supreme Court's decision in *Rafaeli* requires the turnover of Plaintiffs' and class members' Surplus Proceeds;

   b. Whether Defendants' retention of Plaintiff' and class members' Surplus Proceeds violated the Fifth Amendment;

   c. Whether MCL § 211.78t, as implemented by P.A. 256, is a permissive statute;

   d. Whether MCL § 211.78t, as implemented by P.A. 256, precludes Defendants from turning over Plaintiffs' and class members' Surplus Proceeds if a Notice of Intention to Claim Proceeds is not filed by July 1 following the effective date of the foreclosure judgment;

   e. Whether, if MCL § 211.78t does entail such a prohibition, P.A. 256 is unconstitutional on its face and/or as applied;

   f. Whether P.A. 256 hinders Plaintiffs' and class members' property rights;

g. Whether Defendants committed an unconstitutional taking by refusing to pay just compensation when retaining and refusing to turnover Surplus Proceeds from each Subject Property pursuant to *Rafaeli*;

h. Whether Defendants have appropriated Plaintiffs' and class members' property in the form of Surplus Proceeds without payment of just compensation in violation of Article X, § 2 of the Michigan Constitution and the Fifth Amendment of the United States Constitution pursuant to *Rafaeli*;

i. Whether Defendants committed an inverse condemnation of Plaintiffs' and class members' property when the Counties retained and failed and/or refused to turnover Plaintiffs' and class members' Surplus Proceeds pursuant to *Rafaeli*;

j. Whether the provision of P.A. 256 allowing the retention of five percent of the Surplus Proceeds is unconstitutional;

k. Whether Defendant County has been unjustly enriched by their retention of Plaintiffs' and class members' Surplus Proceeds; and

l. Whether the Surplus Proceeds, Remaining Proceeds or Accrued Surplus Proceeds are held by County as trustee.

m. Whether Plaintiffs and class members were entitled to receive their Equity in the Subject Properties based upon fair market value of the Subject Properties.

n. Whether the fair market value of each Subject Property can be established by each Subject Property's State Equalized Value.

87.    Defendants have acted and are continuing to act on grounds generally against the interest of Plaintiffs and class members in the same manner.

88.    The violations of the federal and state Constitutions and resulting harms alleged by the named Plaintiffs are typical of the legal violations and harms suffered by all class members.

89.    An actual controversy within the Court's jurisdiction has arisen between Plaintiffs and class members and Defendants concerning the applicability and constitutionality of P.A. 256 and the return of Surplus Proceeds.

90.    Except as otherwise noted, Plaintiffs and class members share all allegations outlined in this complaint in common.

91.    Plaintiffs, as class representatives, will fairly and adequately protect the interest of the class members, will vigorously prosecute the suit on behalf of the class, and will represent the class members with highly experienced counsel.

92.    The maintenance of this action as a class action will be superior to other available methods of adjudication and will promote the convenient administration

of justice, preventing possible inconsistent or vary adjudications with respect to individual members of the class and/or the Defendants.

**COUNT I**
**DECLARATIVE RELIEF**
**P.A. 256 IS UNCONSTITUTIONAL AND/OR DOES NOT APPLY TO PLAINTIFFS OR CLASS MEMBERS' CLAIMS**

93.     Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

94.     The Subject Properties were sold, and Surplus Proceeds were generated, after July 1 following the effective date of foreclosure.

95.     Pursuant to MCL § 211.78t, Plaintiffs and class members were permitted to submit Michigan Department of Treasury Form 5743 (Notice of Intention to Claim Interest in Foreclosure Sales Proceeds) "by the July 1 immediately following the effective date of foreclosure" of the Subject Properties (July 1, 2021) to obtain Remaining Proceeds. MCL § 211.78t(2).

96.     MCL § 211.78t also sets forth procedures for Plaintiffs and class members to follow to obtain Remaining Proceeds by filing a verified motion by May 15 of the year following foreclosure.  MCL § 211.78t(6).

97.     MCL § 211.78l purports to make MCL § 211.78t the exclusive mechanism for recovery of any proceeds.

98.     Plaintiffs and class members either did not submit Form 5743 by July 1 or did not follow one or more of the other procedures under MCL § 211.78t, or were awarded Remaining Proceeds.

99.     MCL § 211.78t is an unreasonable restraint on Plaintiffs' and class members' constitutionally protected, vested property rights.

100.    MCL § 211.78t requires Plaintiffs and class members to use Form 5743 to make claim to their property, in the form of Remaining Proceeds, before that property even exists.

101.    The procedures under MCL § 211.78t are arbitrary.

102.    Article X, § 2 of Michigan's Constitution and the Takings Clause of the Fifth Amendment of the United States Constitution protect a self-executing constitutional right.

103.    Defendants have used the procedures under MCL § 211.78t to deny return of Surplus Proceeds to Plaintiffs and class members.

104.    MCL § 211.78t, as applied and in practice, violates the Michigan and United States Constitutions through provisions that remove/prohibit self-executing constitutional rights to receive "just compensation" under Article X, § 2 of Michigan's 1963 Constitution and the Fifth Amendment of the United States Constitution.

105.   The State Legislature cannot remove self-executing constitutional rights.

106.   MCL § 211.78t also violates the Equal Protection Clause under Article I, § 2 of Michigan's Constitution and the Fourteenth Amendment of the United States Constitution by implementing an impermissible classification scheme to the disadvantage of claimants who filed Form 5743 after July 1 immediately following the effective date of the Tax Foreclosure.

107.   MCL § 211.78t(2), as implemented by P.A. 256, treats 2021 claimants who filed Form 5743 after July 1 immediately following the effective date of the Tax Foreclosure differently from claimants who filed Form 5743 on or before July 1 immediately following the effective date of the Tax Foreclosure although both classifications of claimants possess the same vested, constitutionally protected property interest in their Surplus Proceeds.

108.   The classification scheme under MCL § 211.78t purports to prohibit claimants who filed Form 5743 after July 1 immediately following the effective date of the Tax Foreclosure from obtaining their Surplus Proceeds or Remaining Proceeds.

109.   The classification scheme under MCL § 211.78t interferes with Plaintiffs' and class members' vest and fundamental property rights; it is illegal and impermissible.

110.   The procedures under MCL § 211.78t are not narrowly tailored to a compelling state interest or reasonably related to a legitimate state interest.

111.   Further, MCL § 211.78t deprives Plaintiffs and class members of procedural and substantive due process under the Michigan and United States Constitutions.

112.   The procedure outlined in MCL § 211.78t abrogates Plaintiffs and class members' vested property rights without requiring notice of the July 1 deadline or other notice or adjudication of a purported confiscation.

113.   Defendants did not provide sufficient notice of the July 1 deadline.

114.   Defendants' notices of the July 1 deadline included conflicting messaging and were confusing, at best.

115.   Defendant did not inform Plaintiffs and class members of the eliminative effect of MCL § 211.78t on their property rights.

116.   Plaintiffs and class members were not provided with a meaningful opportunity to object to the eliminative effect of MCL § 211.78t on their property rights.

117.   Additionally, the July 1 immediately following the effective date of the Tax Foreclosure deadline under MCL § 211.78t coupled with the exclusive remedy provisions of MCL § 211.78l impinges on Plaintiffs' and class members' vested, fundamental property rights in an unconscionable manner by completely abrogating

Plaintiffs' and class members' right to obtain the Surplus Proceeds generated from the Subject Properties based on an arbitrary date.

118.   The requirements of P.A. 256 does not promote a legitimate governmental interest or purpose.

119.   The government's interference with Plaintiffs' and class members' property rights through the enactment of P.A. 256 does not serve a legitimate governmental interest or purpose.

120.   Defendants have been unjustly enriched by their unconstitutional and illegal retention of Plaintiffs' and class members' Surplus Proceeds.

121.   P.A. 256 permits Defendants to retain a five percent (5%) commission fee from Plaintiffs' and class members' Surplus Proceeds.

122.   Defendants' retention of a five percent (5%) commission fee is an unconstitutional taking as well as a violation of the Eighth Amendment prohibition against excessive fines.

123.   P.A. 256 causes a taking of Plaintiffs' and class members' property by government without due process of law and without providing just compensation.

## COUNT II
## CONSTRUCTIVE TRUST

124.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

125.    After the Michigan Supreme Court issued its opinion in *Rafaeli*, Defendants sold or otherwise transferred the Subject Properties and generated Surplus Proceeds.

126.    Upon information and belief, in reliance on MCL § 211.78t, Defendants failed and/or refused to turnover Plaintiffs' and class members' Surplus Proceeds.

127.    Defendants acquired custody of Plaintiffs' and class members' property under such circumstances that Defendants may not in good conscience retain the beneficial interest of Plaintiffs' and class members' Surplus Proceeds.

128.    Defendants retained Plaintiffs' and class members' property by way of unconstitutional provisions—namely MCL § 211.78t—under the GPTA. Defendants used MCL § 211.78t to shield them from their obligation to return Plaintiffs and class members' Surplus Proceeds despite knowledge of the Michigan Supreme Court's decision in *Rafaeli*.

129.    Defendants continue to unlawfully withhold Plaintiffs' and class members' Surplus Proceeds.

130.    A constructive trust arises by operation of law. The Michigan Supreme

Court in *Weir v. Union Trust Co.*, 188 Mich. 452, 463; 154 N.W.2d 357 (1915)

stated:

> Constructive trusts arise by operation of law. The following is
> found in 39 Cyc. p. 169:
>
> 'Constructive trusts do not arise by agreement or from intention,
> but by operation of law; and fraud, active or constructive, is their
> essential element. Actual fraud is not necessary, but such a trust
> will arise whenever the circumstances under which property was
> acquired make it inequitable that it should be retained by him
> who holds the legal title. Constructive trusts have been said to
> arise through the application of the doctrine of equitable
> estoppel, or under the broad doctrine that equity regards and
> treats as done what in good conscience ought to be done. Such
> trusts are also known as trusts *ex maleficio* or *ex delicto*, or
> involuntary trusts, and their forms and varieties are practically
> without limit, being raised by courts of equity whenever it
> becomes necessary to prevent a failure of justice.'

131.    A constructive trust exists when "property has been obtained through

fraud, misrepresentation, concealment undue influence, duress, taking advantage of

one's weaknesses or necessities, or any other similar circumstances which render is

unconscionable for the holder of the legal title to retain and enjoy the property."

*Kammer Asphalt Paving Co., Inc. v East China Twp. Sch.*, 443 Mich. 176, 188; 504

N.W.2d 635 (1993).

132.    Tax Foreclosure is "not a confiscation," and because a "good faith"

construction of the tax foreclosure statute requires government to act as trustee in

selling and holding funds for the former owner indefinitely. *United States v. Taylor,* 104 U.S. 216 at 221-222.

133.  A court is permitted to impose a constructive trust when necessary to do equity and avoid unjust enrichment. *Id.* Thus, a constructive trust may be imposed under any circumstance that renders it unconscionable for the holder of legal title to retain and enjoy the property. *Id.*

134.  Defendants' conduct in failing and/or refusing to turn over Plaintiffs' and class members' Surplus Proceeds is *ex delicto*.

135.  *Rafaeli* imposed an affirmative obligation on Defendants to return Plaintiffs' and class members' Surplus Proceeds: "Similarly, we hold that defendants were required to return the surplus proceeds and that defendants' failure to do so constitutes a government taking under the Michigan Constitution entitling Plaintiffs and class members to just compensation." *Rafaeli,* 505 Mich. at 479.

136.  Despite knowing that the Michigan Supreme Court ruled that they were obligated to return the Surplus Proceeds to Plaintiffs and class members, upon information and belief, Defendants have relied on MCL § 211.78t and refused to do so.

137.  Defendants' conduct is a willful continuance of unconstitutional and unjust practices that Defendants engaged in prior to *Rafaeli*.

138.   Defendants acquired possession of Plaintiffs' and class members' Surplus Proceeds through duress, taking advantage of Plaintiffs' and class members' weakness, or through Defendants' own conduct of enforcing the unconstitutional provisions of P.A. 256, and therein, making it impossible for Plaintiff and class members to obtain their Surplus Proceeds.

139.   Defendants have been unjustly enriched by their retention of Plaintiffs' and class members' Surplus Proceeds.

140.   Defendants acquired and continue to hold Surplus Proceeds which are imbued with and subject to a constructive trust for the benefit of Plaintiffs and class members as a matter of law.

141.   It is inequitable and unconscionable for Defendants to retain Plaintiffs' and class members' Surplus Proceeds as well as any benefit Defendants have obtained from retaining Plaintiffs' and class members' Surplus Proceeds.

142.   Plaintiffs and class members are entitled to the imposition of a constructive trust on their Surplus Proceeds.

143.   Plaintiffs and class members are the beneficiaries of constructive trusts in their favor.

144.   Defendants' acquired possession of and/or title to the Accrued Surplus Proceeds through duress, taking advantage of Plaintiffs' and class members' weakness, necessities, or other circumstances.

145.  Defendants acquired and still hold Accrued Surplus Proceeds which are imbued with and subject to a constructive, involuntary and/or *ex delicto* trust for the benefit of Plaintiffs and class members as a matter of law.

146.  It is inequitable and unconscionable for Defendants to retain Plaintiffs' and class members' property as well as the benefits Defendants have obtained from retaining Plaintiffs' property.

**COUNT III**
**UNJUST ENRICHMENT**
**(AGAINST DEFENDANT OAKLAND COUNTY)**

147.  Plaintiffs and class members incorporate the allegations contained in all pertaining paragraphs.

148.  Defendant County has been unjustly enriched by its illegal taking and retention of Plaintiffs' and class members' Surplus Proceeds.

149.  Upon information and belief, Defendants have put Plaintiffs' and class members' Surplus Proceeds to public use and/or generated interest income from those Surplus Proceeds.

150.  Defendant County has been benefitted by their retention of Plaintiffs' and class members' Surplus Proceeds.

151.  The benefits Defendant County received from retaining Plaintiffs' and class members' Surplus Proceeds are at Plaintiffs' and class members' expense

because Plaintiffs and class members have been deprived of their vested property interest in those Surplus Proceeds.

152.   Plaintiffs and class members do not have an adequate and complete remedy at law except as asserted in this complaint.

153.   It is inequitable for Defendants to retain Plaintiffs' and class members' property and any benefits Defendants have obtained from retaining Plaintiffs' and class members' property. *Dean v Dep't of Natural Res,* 399 Mich 84; 247 NW2d 876 (1976); *Rafaeli, LLC v Oakland County,* 505 Mich 429; 952 NW2d 434 (2020).

## COUNT IV
## TAKING – FIFTH/FOURTEENTH AMENDMENT VIOLATION
## "ARISING DIRECTLY UNDER" THE FIFTH AMENDMENT
## (AGAINST ALL DEFENDANTS)

154.   Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

155.   Plaintiffs and class members make this claim directly under the Fifth Amendment of the United States Constitution.

156.   The Fourteenth Amendment of the United States Constitution has made the Fifth Amendment directly applicable to the individual States.

157.   Defendants, under the guise of MCL § 211.78t, took Plaintiffs' and class members' Surplus Proceeds without just compensation in violation of the Fifth Amendment.

32

158.   The Takings Clause, applicable to the States through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation." *Tyler v. Hennepin Cnty., Minnesota,* 143 S. Ct. 1369, 1375 (2023). See also Id at 1378 ("[t]o withhold the surplus from the owner would be to violate the Fifth Amendment to the Constitution and to deprive him of his property without due process of law, or to take their property for public use without just compensation.") (quoting *United States v. Lawton,* 110 U.S. 146, 150 (1884)).

159.   The taking of Plaintiffs' and class members' property without just compensation is in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States.

160.   Plaintiffs and class members are entitled to just compensation.

161.   Defendants' refusal to take (or not take) any action effectuating the turnover of Plaintiffs' and class members' property deprives Plaintiffs and class of their constitutional right to just compensation in violation of the Fifth Amendment and Fourteenth Amendment, and the violation can, therefore, be remedied by a direct claim under the Fifth Amendment.

162.   The July 1 immediately following the effective date of the Tax Foreclosure deadline and other procedural requirements used to bar Plaintiffs' and class members' claims under P.A. 256 abrogated Plaintiffs' and class members' right

to obtain Surplus Proceeds; P.A. 256 and/or works as an additional taking of Plaintiffs' and class members' property in violation of the Fifth Amendment.

163. Defendants have illegally retained Plaintiffs' and class members' Surplus Proceeds since those Surplus Proceeds were generated at the time of sale.

164. Defendants have denied Plaintiffs and class members the use of their Surplus Proceeds.

165. Plaintiffs and class members are entitled to interest on their Surplus Proceeds as a part of just compensation.

166. Plaintiffs are entitled to interest from the time of taking until payment as part of just compensation in accordance with *Jacobs v United States*, 290 US 13 (1933); *Knick v Twp of Scott,* 139 S Ct 2162 (2019), and their progeny.

167. Upon information and belief, Defendants have accrued interest on Plaintiffs' and class members' Surplus Proceeds.

168. Defendants' retention of earnings or interest on the Surplus Proceeds is a continual ongoing taking that is causing a continual and continuing harm. *See HRSS, Inc v Wayne County Treasurer*, 279 F Supp 2nd 846, 854 (2003).

169. Defendants' retention of any earnings or interest on the Surplus Proceeds is a continual, ongoing taking that is causing continual harm.

170. Plaintiffs and class members have been injured by Defendants' unlawful retention of their Surplus Proceeds and have suffered damages.

171.   Plaintiffs are entitled to costs and attorney fees as a result of Defendant's actions.

## COUNT V
## 42 U.S.C. § 1983
## TAKING – FIFTH/FOURTEENTH AMENDMENT VIOLATION
## (AGAINST ALL DEFENDANTS)

172.   Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

173.   The Fifth Amendment, made applicable to the States via the Fourteenth Amendment, is a constitutional provision and right requiring just compensation upon a taking by Defendants. *See Knick v Twp. Of Scott*, 139 S. Ct. 2162 (2019).

174.   Defendants took Plaintiffs' and class members' Surplus Proceeds and appropriated this property for public use without the payment of just compensation in violation of the Fifth Amendment to the United States Constitution. *See Hall v. Meisner*, 51 F.4th 185 (2023).

175.   Defendants' refusal and/or failure to return Plaintiffs' and class members' property deprived Plaintiffs and class members of their vested property interest in their Surplus Proceeds and violated and deprived them of their constitutional right to just compensation under the Fifth Amendment of the United States Constitution.

176. The enactment of P.A. 256 abrogated Plaintiffs' and class members' right to obtain Surplus Proceeds' P.A. 256 is an additional taking of Plaintiffs' and class members' property in violation of the Fifth Amendment.

177. Plaintiffs and class members are entitled to interest from the time of taking until payment is made as a part of just compensation in accordance with *Jacobs v U.S.*, 290 U.S. 13 (1933); *Knick v Twp. Of Scott*, 139 S. Ct. 2162 (2019) and its progeny.

178. Defendants' retention of any earnings or interest on Plaintiffs' and class members' Surplus Proceeds for public use is a continual, ongoing taking that is causing continual harm. *See HRSS, Inc v Wayne County Treasurer*, 279 F Supp 2nd 846, 854 (2003).

179. Defendants' taking of Plaintiffs' and class members' Surplus Proceeds is violative of and actionable under 42 U.S.C. § 1983, and Plaintiffs and class members are entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

180. Plaintiffs and class members have suffered damages and have been injured by Defendants' unlawful retention of their Surplus proceeds and have suffered damages.

181. Plaintiffs and class members are entitled to just compensation.

## COUNT VI
## 42 U.S.C. § 1983
## VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER THE
## FOURTEENTH AMENDMENT OF THE UNITED STATES
## CONSTITUTION
## (AGAINST ALL DEFENDANTS)

182.   Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

183.   The Fourteenth Amendment of the United States Constitution guarantees substantive due process.

184.   The Fourteenth Amendment is applicable to the State of Michigan.

185.   Plaintiffs' and class members' vested property interest in Surplus Proceeds is a fundamental property right as declared in *Rafaeli, supra.*

186.   Defendants' use of P.A. 256 to retain, or refusal to turn over or return for any reason, Plaintiffs' and class members' Surplus Proceeds impinged on Plaintiffs' and class members' fundamental property right in their Surplus Proceeds and deprived them of substantive due process.

187.   Defendants' conduct in seizing Plaintiffs' and class members' Surplus Proceeds and Accrued Surplus Proceeds and refusal to return the same, despite knowledge of the Michigan Supreme Court's clear and dogmatic pronouncements in *Rafaeli* amounts to arbitrary governmental action that shocks the conscience.

188.   Defendants have not given Plaintiffs and class members just compensation.

189.   Plaintiffs and class members have been damaged as a direct and proximate result of Defendants' violations.

190.   Plaintiffs and class members do not have an adequate remedy at law except as asserted in this complaint.

## COUNT VII
## 42 U.S.C. § 1983
## VIOLATION OF PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION
## (AGAINST ALL DEFENDANTS)

191.   Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

192.   Plaintiffs and class members are entitled to procedural due process under the Fourteenth Amendment of the United States Constitution.

193.   The Fourteenth Amendment is applicable to the State of Michigan.

194.   Plaintiffs and class members have a constitutionally protected property interest in the Surplus Proceeds generated from the Subject Properties. Or in the alternative, the Equity in the Subject Properties.

195.   Defendants did not provide sufficient notice to Plaintiffs and class members of the preclusive effect of MCL § 211.78t on Plaintiffs' and class members' vested property interest in their Surplus Proceeds.

196.   Defendants' taking and retention of Plaintiffs' and class members' Surplus Proceeds without proper notice or the opportunity to object deprived Plaintiffs and class members of procedural due process.

197.   Defendants have not given Plaintiffs and class members just compensation.

198.   Plaintiffs and class members have been damaged as a direct and proximate result of Defendants' violations.

**COUNT VIII**
**42 U.S.C. § 1983**
**VIOLATION OF THE EIGHTH AMENDMENT**
**(AGAINST ALL DEFENDANTS)**

199.   Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

200.   This count is pled to the extent that Defendants argue or assert that Plaintiffs and class members were punished with an in-rem civil forfeiture of Surplus Proceeds pursuant to the GPTA.

201.   This count is also pled to the extent that Defendants assert that MCL § 211.78t(9) is applicable to Plaintiffs and class members to decrease the amount of Plaintiffs' and class members' Surplus Proceeds by the five percent (5%) commission fee stated therein.

202. The Eighth Amendment to the United States Constitution (the "Eighth Amendment"), located in the United States Bill of Rights, prohibits the government from imposing excessive fines, which the US Supreme Court has applied to action(s) involving *in-rem* civil forfeitures.

203. The Fourteenth Amendment makes the Eighth Amendment applicable to the State of Michigan.

204. By imposing and retaining an excessive fine in the form of the *in-rem* civil forfeiture of Plaintiffs' and class members' Equity in the Subject Properties in excess of the Tax Delinquencies, Plaintiffs' and class members' Eighth Amendment rights have been violated. *See Austin v United States,* 509 US 602 (1993) and *Tyler v Hennepin Cnty., Minnesota,* 143 S. Ct. 1369, 1375 (2023) (Gorsuch, J and Jackson, J, concurring).

205. Defendants' retention of Plaintiffs' and class members' Surplus Proceeds or Equity, which by definition is exclusive of the Tax Delinquencies, is punitive and not remedial.

206. Defendants' retention of a five percent (5%) commission fee deducted from Plaintiffs' and class members' Surplus Proceeds is punitive.

207. Defendants' conduct was reckless and undertaken with complete in difference to Plaintiffs' and class members' federal right to be free from violations of the Eighth Amendment.

208.   Plaintiffs are entitled to their costs and attorney fees as a result of Defendants' actions.

209.   Violations of the Eighth Amendment are remedied by a money judgment against Defendants pursuant to 42 U.S.C § 1983 and § 1988.

210.   Plaintiffs and class members have been injured by Defendants' lawful retention of their Surplus Proceeds and have suffered damages.

**COUNT IX**
**TAKING CLAIM – INVERSE CONDEMNATION IN VIOLATION OF ARTICLE X, § 2**
**OF MICHIGAN'S CONSTITUTION (AGAINST DEFENDANT OAKLAND COUNTY AND DEFENDANT TRESURERS IN THIER OFFICIAL CAPACITIES)**

211.   Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

212.   *Rafaeli* vested in Plaintiffs and class members a property interest in Surplus Proceeds protected by Article X, § 2 of Michigan's 1963 Constitution (Michigan's "Takings Clause").

213.   Defendants' retention of Plaintiffs' and class members' Surplus Proceeds or Equity after *Rafaeli* violates Michigan's Takings Clause and constitutes a taking under Article X, § 2 of Michigan's Constitution.

214.   The enactment of P.A. 256 abrogated Plaintiffs' and class members' right to obtain Surplus Proceeds or Equity; P.A. 256 is an additional taking of

Plaintiffs' and class members' property in violation of Article X, § 2 of Michigan's Constitution.

215.   In addition to the Surplus Proceeds, the Defendants have also retained income earned from the Surplus Proceeds ("Income Takings"). Defendants' retention of earnings and/or interest on Plaintiffs' Surplus Proceeds constitutes an additional taking under Article 10, § 2 of Michigan's 1963 Constitution and the Fifth and Fourteenth Amendments of the United States Constitution.

216.   Defendants' retention of earnings and/or interest on Plaintiffs' Surplus Proceeds constitutes an additional taking under Article 10, § 2 of Michigan's 1963 Constitution and the Fifth and Fourteenth Amendments of the United States Constitution.

217.   Defendants' retention of the Accrued Surplus Proceeds is a continual, ongoing taking that is causing a continual accruing harm. See HRSS, Inc v Wayne County Treasurer, 279 F Supp 2nd 846, 854 (2003): "For the reasons stated above, the court finds that, if the interest earned on the overbid surpluses was greater than fees properly attributed to those surpluses, the resulting net interest is the property of the individual that owns the principal and that the County's retention of such interest, if it exists, without any compensation constitutes a taking in violation of the Fifth Amendment."

218.   Defendants took Plaintiffs' and class members' property without using any direct condemnation process before the taking, including those Defendants could have utilized as outlined under the Uniform Condemnation Procedures Act, MCL § 213.51, et seq.

219.   Defendants utilized the provisions of MCL § 211.78t to prevent Plaintiffs and class members from obtaining their Surplus Proceeds.

220.   Defendants have not paid and continue to refuse to pay just compensation to Plaintiffs and class members.

221.   Defendants do not intend to pay just compensation in the future to Plaintiffs and class members.

222.   An inverse condemnation has occurred as to the Plaintiffs and class members.

223.   Plaintiffs and class members have been injured by Defendants' actions.

224.   Plaintiffs and class members are entitled to maintain this action as an action for inverse condemnation. *See Electro-Tech, Inc. v HF Campbell Co.*, 433 Mich. 54; 445 N.W.2d 61 (1989).

## COUNT X
## VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER ARTICLE I, §
## 17 OF THE MICHIGAN CONSTITUTION
## (AGAINST ALL DEFENDANTS)

225.    Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

226.    Pursuant to Article I, Section 17 of the Michigan Constitution, Plaintiffs and class members are entitled to substantive due process.

227.    Substantive due process "protects against the arbitrary exercise of governmental power . . ." *Bonner v City of Brighton*, 495 Mich. 209, 224; 848 N.W.2d 380 (2014).

228.    Defendants' use of P.A. 256 to take Plaintiffs' and class members' Surplus Proceeds or Equity interfered with Plaintiffs' and class members' vested property rights and deprived them of substantive due process.

229.    Defendants' conduct in seizing Plaintiffs' and class members' Surplus Proceeds (whether the full amount or five percent (5%)) or Equity and refusal to return the same, despite knowledge of the Michigan Supreme Court's decision in *Rafaeli* is an arbitrary exercise of governmental power that shocks the conscience.

230.    Plaintiffs and class members have been damaged as a direct and proximate result of Defendants' violations.

231.    Plaintiffs and class members do not have an adequate remedy at law except as asserted in this complaint.

## COUNT XI
## VIOLATION OF PROCEDURAL DUE PROCESS UNDER ARTICLE I, §
## 17 OF THE MICHIGAN CONSTITUTION
## (AGAINST ALL DEFENDANTS)

232. Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

233. Plaintiffs and class members are entitled to procedural due process.

234. Plaintiffs and class members have a constitutionally protected property interest in the Surplus Proceeds or Equity generated from the Subject Properties.

235. Plaintiffs and class members have a constitutionally protected interest in the Surplus Proceeds or Equity generated from the Subject Properties.

236. Defendants' taking and retention of Plaintiffs' and class members' Surplus Proceeds or Equity without notice or the opportunity to object or be heard prior to the taking deprived Plaintiffs and class members of procedural due process.

237. Plaintiffs and class members have been damaged as a direct and proximate result of Defendants' violations.

## COUNT XII
## INJUNCTIVE RELIEF
## (AGAINST ALL DEFENDANTS)

238. Plaintiffs and class members incorporate the allegations contained in all preceding paragraphs.

239. Defendants are in possession of Plaintiffs' and class members' Surplus Proceeds in violation of the Michigan and United States Constitutions.

45

240.   Plaintiffs and class members do not have an adequate remedy at law except as asserted in this complaint.

241.   Equity and good conscience require that this Court enter an order granting Plaintiffs' and class members' request for injunctive relief enjoining Defendants from retaining Plaintiffs' and class members' Surplus Proceeds and requiring Defendants to turnover those Surplus Proceeds to Plaintiffs and class members.

### COUNT XIII
### CONVERSION
### (AGAINST ALL DEFENDANTS)

242.   Plaintiffs and class members incorporate all the allegations above as if fully restated herein.

243.   Defendants' failure to turn over Plaintiffs' and class members' Surplus Proceeds or Accrued Surplus Proceeds promptly after the Michigan Supreme Court's decision in Rafaeli was released deprived Plaintiffs and class members of their property and constitutes an act of conversion and theft.

244.   Plaintiffs demanded the Defendants relinquish Plaintiffs' and class members property.

245.   Further demands are excused inasmuch as such efforts would be futile.

246.   Defendants took Plaintiffs' and class members' property without Plaintiffs' and class members' consent.

46

247.    Defendants continued control of Plaintiffs' and class members' property constitutes conversion, embezzlement, or theft.

248.    Plaintiffs and class members have been damaged as a direct result and proximate result of Defendants' actions.

## COUNT XIV
## STATUTORY CONVERSION
## (AGAINST DEFENDANT COUNTY)

249.    Plaintiffs and class members incorporate the allegations above as if fully restated herein.

250.    On July 17, 2020, the Michigan Supreme Court issued its opinion in *Rafaeli*, which authorized Plaintiffs and class members to make claims and receive the Surplus Proceeds.

251.    Plaintiffs and class members demanded Defendants turn over Plaintiffs' property.

252.    Defendants failed or refused to turn over Plaintiffs' and class members' property.

253.    Defendant County has converted Plaintiffs' and class members' Accrued Surplus Proceeds or Equity to the County's own use as contemplated by MCL § 600.2919a.

254.    Defendant County's continued retention and control of Plaintiffs' and class members' property and Defendants' conversion of Plaintiffs' and class members' property to the County's own use constitutes statutory conversion under MCL § 600.2919a.

255.    As a result of Defendants' actions, Plaintiffs and class members sustained damages.

256.    State law provides that a person damaged as a result of a violation of that law, "may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees." MCL § 600.2919a. Plaintiffs and class members are, therefore, entitled to treble damages.

257.    Plaintiffs are entitled to treble damages, costs, and recovery of actual reasonable attorney fees. MCL § 600.2919a.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of those similarly situated, request that this Court grant the following relief:

a.  Enter an Order certifying this case as a class action;

b.  Enter an Order declaring that Plaintiffs will adequately represent the class and naming Plaintiffs as the lead Plaintiffs in this class action matter;

c.  Enter an Order declaring MCL § 211.78t as unconstitutional on its face;

48

d.  Enter an Order declaring MCL § 211.78t as unconstitutional as applied to Plaintiffs and class members;

e.  Enter an Order declaring MCL § 211.78t as unconstitutional as in effect to Plaintiffs and class members;

f.  Enter an Order declaring Defendants' retention of Plaintiffs' and class members' Surplus Proceeds as unconstitutional under the Michigan and United States Constitutions;

g.  Enter an Order declaring that Plaintiffs' and class members' Surplus Proceeds are imbued with a constructive trust to remedy Defendants' unconscionable withholding of Plaintiffs' and class members' property and requiring an accounting and turnover of all Surplus Proceeds and any income earned thereon over the relevant timeframe;

h.  Enter an Order finding Defendants liable under any or all counts contained herein;

i.  Enter an Order for any and all damages and/or compensation as is deemed proper;

j.  Enter an Order requiring Defendants to turn over to Plaintiffs' and class members' Surplus Proceeds plus interest (Accrued Surplus Proceeds) from the date the Subject Properties were sold;

k. Enter an Order disgorging any interest or money Defendants earned from retention of Surplus Proceeds;

l. Enter an Order for an award of any all damages available under federal and state law as applicable; including but not limited to punitive damages;

m. Enter an Order for an award of attorney fees, costs and interest pursuant to all other applicable laws, rules, or statutes;

n. Enter an order for interest from the date of Judgment until Defendants pay the Judgment;

o. Enter an order enjoining the Defendants from retaining Plaintiffs and class members Surplus Proceeds and requiring Defendants to turnover those Surplus Proceeds to Plaintiffs and class members;  and

p. Enter an order adjudging Defendants' conduct to be statutory conversion and a federal taking and order Defendants to pay Plaintiffs three times the equity taken/converted, costs, attorney fees, and interest;

q. Enter an order for an award of treble the amount of the Accrued Surplus Proceeds, plus actual attorney fees, for violation of MCL 600.2919a;

r. Enter an order for all other legal and/or equitable relief the Court deems proper.

## JURY DEMAND

For all triable issues, a jury is hereby demanded.

Date:  July 13, 2023                    Respectfully submitted,


                                        /s/ Donald R. Visser
                                        **Donald R. Visser (P27961)**
                                        Donovan J. Visser (P70847)
                                        *Counsel for Plaintiffs*

                                        VISSER AND ASSOCIATES, PLLC
                                        2480 44th Street, Suite 150
                                        Kentwood, MI
                                        Tel: (616) 531-9860
                                        Fax: (616) 531-9870
                                        donv@visserlegal.com
                                        donovan@visserlegal.com